

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2006

# Tjin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2991

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Tjin v. Atty Gen USA" (2006). *2006 Decisions.* Paper 638.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/638

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2991

SIAUW LAN TJIN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,

Respondents

On Petition for Review from an Order of the
Board of Immigration Appeals
(Agency No. A96 263 172)
Immigration Judge: Miriam K. Mills

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 30, 2006

BEFORE: SMITH and  COWEN, Circuit Judges,
and THOMPSON*, District Judge

(Filed: August 1, 2006)

---

*Honorable Anne E. Thompson, Senior United States District Judge for the District of
New Jersey, sitting by designation.

OPINION

COWEN, Circuit Judge.

Siauw Lan Tjin petitions for review of an order of the Board of Immigration

Appeals ("BIA"), which adopted and affirmed an Immigration Judge's ("IJ") order

denying her application for asylum and withholding of removal pursuant to the

Immigration and Nationality Act ("INA"), and protection under the Convention Against

Torture ("CAT"). For the reasons stated below, we will deny the petition.[1]

I.

Because we write solely for the benefit of the parties, we recite only those facts

necessary to our analysis. Tjin is a citizen and native of Indonesia. On February 2, 2001,

she was admitted to the United States as a non-immigrant with authorization to remain

until March 1, 2001. On May 20, 2003, the former Immigration and Naturalization

Service ("INS") served Tjin with a Notice to Appear charging her with removability

under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted.

Tjin conceded removability, but requested a grant of asylum, withholding of removal,

protection under CAT, and, in the alternative, the privilege of voluntary departure.

---

[1] Tjin failed to challenge the denial of her CAT claim before the BIA, and, therefore, we need not review the denial of that claim.

Tjin claims that she was persecuted in Indonesia on account of her Chinese ethnicity. At the removal hearing, Tjin testified that on May 13, 1998, while she was living with her mother and her sister in Semarang, Central-Java, Indonesia, two native Indonesian men entered her home, assaulted her, and looted her property. She testified that when three more native Indonesian men entered her home, she fled out of "fear that they w[ould] rape me or they w[ould] do something else." (A.R. at 54.) After the incident, Tjin returned to the same home and continued to live there with her mother and her sister until she came to this country in 2001.

Aside from the May 13, 1998 incident, Tjin testified that "[t]he other things that occur[red] [were] sometimes those people would come to our house and ask[] for money." (A.R. at 54.) She also testified that "[s]ince [she] was a child, [she] [has] fear[ed] all the time . . . other people throwing things at our homes." (A.R. at 51.)

Following the hearing, the IJ denied Tjin's applications for asylum, withholding of removal, and protection under CAT, but granted her request for voluntary departure. As to her asylum claim, the IJ determined that Tjin was not eligible for asylum because she did not file her application within one year of her arrival in the United States, and, moreover, that she failed to demonstrate changed circumstances affecting her eligibility or extraordinary circumstances justifying her delay, pursuant to 8 U.S.C. § 1158 (a)(2)(D). The IJ concluded that even if her asylum application had been timely, Tjin was not entitled to asylum because she had not met her burden of proving a reliable claim. The IJ reasoned that there were inconsistencies in the record regarding her place of

3

residence and her employment, which weakened her overall credibility. In addition, the IJ noted that Tjin had not provided any medical evidence to corroborate her testimony that she suffered and continues to suffer from mental trauma, even though that evidence could have reasonably been obtained from a psychologist. For the same reasons, the IJ denied her claims for withholding of removal and CAT protection.

The BIA entered an order affirming and adopting the IJ's order, and this appeal ensued.

## II.

## A.

With respect to her asylum claim, Tjin contends that the IJ committed legal error when she failed to consider a United States Department of State Country Report on Human Rights Practices in Indonesia in 2002 ("Country Report") in determining whether Tjin's untimely asylum application was excused by changed circumstances affecting her eligibility or extraordinary circumstances relating to the delay, as provided in 8 U.S.C. § 1252(a)(2)(D). We reject her contention for the reasons given below.

As an initial matter, the record contradicts Tjin's bald assertion that the IJ did not consider the Country Report. As indicated in the Oral Decision and Orders of the Immigration Judge, the IJ considered the state of the ethnic relations in Indonesia as reported in the Country Report in rendering her determination regarding the timeliness of Tjin's asylum application. (A.R. at 33-35.) The IJ noted that "[w]hile the Country Reports indicate ethnic Chinese still may face discrimination and harassment, there is

4

otherwise improvement shown in inter-ethnic relations involving ethnic Chinese, which includes the open airing of their music and the circulation of Chinese language books." (A.R. at 35.)

If Tjin means to argue that the IJ should have found, based upon the information in the Country Report and the other record evidence, that she had demonstrated the existence of changed circumstances affecting her asylum eligibility or extraordinary circumstances relating to the delay, that argument is also unavailing. Despite the changes of the REAL ID Act of 2005, we do not have jurisdiction to review a factual determination regarding whether an asylum applicant has demonstrated changed circumstances affecting her eligibility or extraordinary circumstances relating to the delay, *See Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006).

In summary, we conclude that the record belies Tjin's claim of legal error, and we have no jurisdiction to review her factual challenge to the IJ's determination that her untimely asylum application was not excused under 8 U.S.C. § 1252(a)(2)(D). As a result, we will affirm the BIA's denial of asylum.

B.

With regard to her withholding of removal claim, Tjin's only contention on appeal is that the record evidence establishes that she suffered past persecution in Indonesia, such that there is a presumption that her life or freedom would be threatened if she were removed there. The IJ did not expressly address the issue of whether the record evidence establishes past persecution. Instead, the IJ concluded that Tjin had not met her burden of

5

proving a reliable claim because there were inconsistencies in the record regarding her

place of residence and her employment, and there was a lack of medical evidence in the

record corroborating her testimony that she suffered and continues to suffer from mental

trauma.[2] Nevertheless, even assuming that Tjin's testimony was credible and

corroboration was not necessary, we conclude that Tjin has not established a claim of past

persecution.

"In order to qualify for withholding of removal, an applicant must show a 'clear

probability' that his or her life or freedom would be threatened if s/he is deported. The

question under that standard is whether it is more likely than not that the alien would be

subject to persecution." *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir. 2003) (internal

quotation marks and citations omitted). "The burden of proof is on the applicant for

withholding of removal . . . to establish that his or her life or freedom would be threatened

in the proposed country of removal on account of race, religion, nationality, membership

in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). If the applicant

is determined to have suffered past persecution in the proposed country of removal, it

shall be presumed that the applicant's life or freedom would be threatened in the future in

the country of removal on the basis of the original claim. 8 C.F.R. § 1208.16(b)(1)(i).

Tjin's claim of past persecution is based on a single, isolated robbery that occurred

at her home in Indonesia on May 13, 1998. The record does not contain any evidence

---

[2] Tjin has not challenged the IJ's demand for corroboration and/or the IJ's credibility findings, and, therefore, we will not address those issues.

indicating that the intruders were motivated by Tjin's ethnicity. In her I-589 application, Tjin only speculates that their motivation "*could* be my appearance look like Chinese." (Pet'r App. at 24) (emphasis added).

Tjin testified that she "got some punches" when she attempted to stop the intruders from coming into her home. However, her mother and sister, both of whom are also Chinese and were present inside a bedroom during the robbery, were unharmed. (A.R. at 70.) Moreover, Tjin concedes that she did not attempt to contact the police to report the incident, and after the incident she continued to live at the same residence for nearly three years without incident before coming to the United States.

Under circumstances similar to those detailed above, we have concluded that an asylum applicant failed to establish past persecution. *See Lie v. Ashcroft*, 396 F.3d 530, 532-36 (3d Cir. 2005) (concluding that an asylum applicant had not established past persecution where, other than a single racial slur, there was no evidence that the two robberies were motivated by ethnicity or religion, and the isolated robberies resulted only in the theft of some property and a minor injury).

Based upon the record in this case, we conclude that Tjin has not established a claim of past persecution, and that the IJ's decision is supported by substantial evidence. Accordingly, we will affirm the BIA's denial of withholding of removal.

III.

For the foregoing reasons, the petition for review will be denied.

_____